## CHATFIELD *v.* SINTZ-WALLIN CO.

1. FRAUD—PLEADING—STOCK—CORPORATIONS.

    Where plaintiff's declaration alleged that she offered in October, 1909, to purchase stock of defendant corporation, which in the following March accepted her proposal, issuing certificates of stock as ordered, but in the meantime a reorganization took place and defendants knew that plaintiff expected and offered to subscribe for treasury stock, that shares of stock actually forwarded to plaintiff were not treasury stock but belonged to one of the officers of the company and the purchase price went to him instead of the corporation, that by the second or later plan of reorganization the corporate stock was rendered valueless, and that the financial condition of the defendant company had completely altered at that time, averring the knowledge and participation of the individual defendants, officers and directors of defendant, in the wrongful acts stated, plaintiff sufficiently set forth a cause of action for fraud and would be entitled to recover if the evidence substantiated the allegations of her pleading.[1]

2. SAME—RESCISSION—SALES.

    The fact that she rescinded her contract of purchase by tendering back to the corporation the capital stock which

---

[1] As to the rescission of subscription to stock for fraud and misrepresentation, see note in 33 L. R. A. 721.

690 182 Michigan Reports. [Oct.

was delivered to her, demanding back the purchase price, did not preclude plaintiff from bringing an action against the individual defendants.

3. SAME—EVIDENCE.

Conflicting evidence raising the issue whether or not plaintiff's husband was her agent, and had knowledge of the facts, which plaintiff claimed she did not know, was properly submitted to the consideration of the jury.

Error to Kent; Perkins, J. Submitted June 3, 1914. (Docket No. 14.) Decided October 3, 1914. Rehearing denied December 19, 1914.

Case by Nellie C. Chatfield against the Sintz-Wallin Company and others for the recovery back of money paid for stock of said corporation. Judgment for plaintiff. Defendants bring error. Affirmed.

*Norris, McPherson & Harrington* (*Oscar E. Waer,* of counsel), for appellants.

*Ellis & Ellis,* for appellee.

OSTRANDER, J. In the declaration, in the special count, defendants are charged with issuing and circulating a false, fraudulent, and misleading prospectus with respect to the solvency of defendant corporation, the profitableness of its business, and the ability to pay a large dividend on its preferred stock, representing that there was for sale treasury preferred stock of the corporation which, if sold, would increase its issue of preferred stock; the intent and purpose being to induce plaintiff to purchase the stock of defendant corporation and get five hundred dollars of her money. The individual defendants are described as officers and stockholders of defendant corporation, and are charged with conspiring and agreeing together to cheat and defraud plaintiff and to turn over to her worthless stock of the defendant corporation. By means of the false representations and the

conspiracy and combination, plaintiff was deceived and induced to pay over to defendant corporation $500 for 5 shares of the treasury preferred stock of the corporation, which purported to be worth, upon the certificate issued therefor, $100 a share. In the same count it is alleged that on or about October 15, 1909, relying upon the said fraudulent representations, plaintiff subscribed for 5 shares of the treasury preferred capital stock of the defendant corporation, and on or about April 11, 1910, paid to the defendant corporation $500, and received from it, in exchange, certificates for five and eight-tenths shares of stock, purporting to be treasury preferred capital stock of said corporation—

"Having been informed by her husband, Charles B. Chatfield, who had also subscribed for and purchased stock of the said company, that said company had decided to issue said stock as paying a 7 per cent. instead of an 8 per cent. dividend, and that he, her said husband, had arranged with said company to issue to this plaintiff 5 8/10 shares of said stock drawing a 7 per cent. dividend, instead and in place of 5 shares of said stock drawing an 8 per cent. dividend, so that this plaintiff might have her said $500 so invested in said stock, drawing an 8 per cent. dividend."

It is alleged that when the false representations were made and when the certificate was delivered the stock was worth nothing. After the false representations were made, and before the money was paid and the certificates of stock delivered, but unknown to plaintiff, the defendant corporation, being bankrupt and insolvent, issued its preferred stock to pay its debts, and made a composition with creditors, or some of them, paying them one-half in preferred stock, one-fourth in cash, and one-fourth in notes. Various details of the alleged bankruptcy and various dealings are set out. It is finally alleged that the stock delivered to the plaintiff was not treasury stock of the defendant corporation and that her money did not go

into the corporation treasury. Instead, the money went to defendant Claude Sintz, and it was he, by the aid and connivance of the other defendants, who sold to plaintiff some of the capital stock of the defendant corporation owned by himself, and used the money paid by plaintiff to pay a mortgage for the payment of which he was liable. After learning that she had been defrauded, the plaintiff tendered her stock to the defendant corporation, to the president thereof, demanding that her money be returned to her; the demand being refused. The defendant has never paid any interest or dividend on the said stock nor been able to do so. Plaintiff has been deprived of her money and the use thereof, to her damage $1,000. The count is concluded by pleading the statute (3 Comp. Laws, §§ 10421, 10422), an allegation of the promise of defendants to pay her $1,000 for her damages and injuries, and the final refusal of defendants to do so. The common counts in assumpsit are added. The plea for all of the defendants was the general issue.

At the close of plaintiff's testimony counsel for defendants asked for a peremptory instruction in their favor, assigning as reasons:

"(1) That the evidence fails to sustain in any degree the allegations of fraud made in the declaration.

"(2) That under the undisputed evidence the prospectus which is claimed to contain all fraudulent allegations or statements upon which the cause of action is based is not shown to have been authorized by the corporation, and is not signed by any one of the individual defendants.

"(3) That the prospectus upon which the cause of action is based is the prospectus offering for sale to the public treasury stock of a corporation, while the evidence—the undisputed evidence of the plaintiff— is that she purchased the individual stock of another, and not treasury stock of the corporation.

"(4) That there is no evidence in the case upon

which the jury can assess damages; the rule of damages being that in such a case the plaintiff shall recover the difference between the real value of the stock when it was purchased and the represented value of the purchase price paid, there being no evidence here from which a jury can determine what was the real value of the stock at the time of the purchase.

"(5) That, in so far as the action is based upon a rescission, it is only shown here that tender was made back to the corporation which was not the vendor of the stock and that no tender was made to the defendant, Claude Sintz, who was the vendor of the stock, so that no rescission was made."

Some discussion took place, and in the course of it the record shows the following:

"At this point, plaintiff's evidence having all been taken and plaintiff having rested, counsel for plaintiff, without objection upon the part of defendants, asked to amend the declaration in this case, and thereupon the court stated:

"'I am very firmly convinced that the declaration would cover the point as suggested here, and the only remaining point I can see is the liability as to these defendants.'"

What amendment was desired is not clear, none was made, and no formal amendment was proposed. Before the concluding arguments were made, counsel for defendants said to the court, among other things:

"It is my understanding that the case will be submitted to them on the theory that the truth or falsity of that prospectus is not bound in the suit. If I am right as to that it will simplify the argument; otherwise another line of argument will be necessary."

The reference was to the prospectus of October, 1909, which plaintiff claimed to have read and relied upon. In response the court said:

"I think it is perfectly clear to my mind, from all that has been said, that, as far as the prospectus of 1909 is concerned, it is immaterial excepting so far as it relates to the source from which the stock which

was to be issued was to come. This case must rest upon another and a different proposition, if it goes to the jury at all. As I said the other day, the prospectus of 1909 was unsigned, and there is nothing in writing signed by those issuing it which would comply with our statutes of fraud under the repeated decisions of our court, even though the representations should be believed to be false by the jury and the plaintiff induced thereby to take this stock; still under the law there can be no recovery as against the defendant, causing it to be issued or circulated for the reasons stated. But back of that is the other proposition which I believe is sufficiently set forth in the declaration. The prospectus offered to sell stock of the corporation—treasury stock—and set forth a certain scheme of reorganization. The plaintiff ordered five shares of stock or subscribed for five shares of stock upon the representation contained in this prospectus. Later the plan of organization was changed, and changed materially, in the prospectus which was issued in February, 1910. The question is as to whether the plaintiff before she paid her money and received the stock was advised as to this change and knew about it, and consented to it, and paid her money knowing the facts about the change; secondly, as to whether the defendants jointly and severally, acting in behalf of the company as directors, at the meeting adopted and confirmed this prospectus of 1909, and in so far as any subscriptions for stock had been received under it, and knowingly and wilfully permitted the plaintiff, without her knowledge, to pay her money under the changed conditions and receive stock under a belief that it was treasury stock, when it was not. Whether they knowingly and wilfully permitted this to be done, that, of course, must be determined by the records and what the parties said and did. If there was no ratification or confirmation or adoption by reference or otherwise to this prospectus of 1909 by the act of the corporation, through its directors, and if the directors did not knowingly and wilfully permit the plaintiff to pay her money in ignorance of the real fact, there can be no recovery. But if they did permit her to pay her money under a mistaken apprehension of what the facts were, she

can recover. I understand that it is claimed that this changes the cause of action; that the declaration taken as a whole is based upon a different theory, viz., the theory of the falsity of the statements contained in the prospectus of 1909. I think perhaps that is true, taking the declaration as a whole that that was the theory of the plaintiff, but, at the same time, the declaration alleges the subsequent proceedings, claims that the plaintiff subscribed for treasury stock and received private stock from Claude Sintz instead, and the plan of organization was changed without her knowledge, and all in all it seems to me that there is sufficient in the declaration to justify the submission of the single question to the jury, and so I repeat the question to be argued to this jury, and as I will charge them when the time comes, if I am not charging them now, will be that these conditions jointly and severally and as officers of this corporation acting for the corporation at that time, knowingly and wilfully so acted as to lead the plaintiff to believe and understand that she was receiving treasury stock of this corporation, and knowingly and wilfully led her to believe and understand that the condition of the company at the time she paid her money and the proposed organization of the company was as stated in the prospectus of 1909. Now, that is as clear as I can state it, gentlemen, generally, and you may confine your arguments to that on both sides."

In substance and effect the issue finally submitted to the jury is here stated, and a verdict for plaintiff was returned against all of the defendants, the amount of which is, evidently, the purchase price of the stock and interest. Judgment was entered on the verdict. A motion for a new trial was refused, and errors were assigned upon exceptions taken during the trial and upon refusals to charge, the charge as given, and the refusal of a new trial. Under suitable headings those now relied upon are argued in the briefs and were argued orally.

It is contended:

"(1) Plaintiff's action for a rescission of her contract could be brought only against the corporation.

"(2) The court should have instructed the jury that, under plaintiff's own showing, she constituted her husband her agent and was bound by knowledge obtained by him.

"(3) There was a fatal variance between the pleadings and the proofs and the theory upon which the case was submitted to the jury.

"(4) The admission of evidence relative to the fraudulent character of the prospectus of October, 1909, was prejudicial, and a new trial should have been granted.

"(5) There was no evidence to sustain the allegations of fraud.

"(6) The court erred in his rulings on the admission of certain documents and evidence.

"(7) Plaintiff's counsel made improper remarks to the jury.

"(8) The court erred in its refusal to instruct and in its instructions to the jury."

These contentions must be considered in connection with the issue upon which the case was made finally to turn. If that issue is not within the pleadings, then, necessarily, error was committed. If the plaintiff's declaration, however inartificially drawn, fairly presented the issue which was submitted, then most of the contentions of the appellants are unimportant.

The testimony for the plaintiff supports the following conclusions: Her proposal to buy stock was made to the corporation, was accepted by the corporation, by its officers, and certificates of stock apparently issued by the corporation to her were delivered to her and payment therefor was made by her to the corporation. Her proposal was made in reliance upon a paper—prospectus—not signed by any one, but bearing date in October, 1909. She made her proposal, or subscription, in writing, in October, 1909. It was not then accepted. In March, 1910, a plan of reorganization of defendant company which differed

essentially from the one suggested or proposed in October, 1909, was adopted. Afterwards certificates of stock, as if issued in reply to and acceptance of plaintiff's proposal to buy stock, were delivered to plaintiff's husband, for her, and she paid for it by her check, payable to the company. When the stock was issued to her, the officers of the defendant company knew that plaintiff's proposal, or subscription, was made in reliance upon the plan of reorganization proposed in October, 1909. They knew it was a subscription for treasury stock. By their action she received, not treasury stock, but stock belonging to defendant Claude Sintz, and Sintz, and not the defendant company, got the money on plaintiff's check. Plaintiff then knew nothing about the new plan for reorganizing the corporation, and supposed that her stock was, in fact, treasury stock for which she had paid the defendant company. The financial condition of the company was not the same in March, 1910, as it was in October, 1909. The plan of reorganization adopted in March, 1910, was essentially different from the one proposed in October, 1909. It is to be presumed that one who would be willing to subscribe for stock under the first plan would not be likely to do so under the second plan; the condition of the defendant corporation being known to him. The stock is, in fact, of no value.

These conclusions correspond with allegations found in the declaration. Such allegations, standing alone, state a cause of action against the persons who took part in depriving plaintiff of her money. All of the individual defendants knew that plaintiff was not receiving the thing she sought to purchase, and all of them, innocently or otherwise, were parties to the proceedings by which the stock she received was given to her and the money which she paid was lost to her. They aided the defendant Claude Sintz in disposing

of some of his stock and in securing money intended by plaintiff for the corporation treasury.

It is true it is alleged and is proven that plaintiff tendered her certificates of stock to the corporation and demanded the amount she had paid for them. But she brought her action for the fraud, of all of the defendants—at least the declaration is sufficient in form for this purpose—and no good reason is perceived for denying her relief because her attitude in tendering the certificates was one of rescission. No one appears to have been surprised at the course taken upon the trial or to have been denied the right to present such testimony as was available touching the issue submitted to the jury. Testimony affecting issues which were withdrawn from the jury was not, in view of the uncontradicted evidence that plaintiff did not receive treasury stock and that her money did not go into the treasury of the company, prejudicial to defendants. The court laid down no rule of damages for the jury. It is stated in the charge of the court that the plaintiff demanded of the defendant corporation when she tendered her certificates the money she had paid and interest. As has been stated, a verdict was returned for the price paid and interest, a sum which, in view of the testimony, is a proper award. Whether plaintiff's husband was her agent, had knowledge which she did not possess, and concluded her by what he knew, were questions submitted to the jury. It is doubtful if the testimony, in any view of it, sustains the contention of appellants in this behalf.

Upon a review of the entire case, no reversible error is made out, and the judgment is therefore affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.